UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
GEORGE MARTINEZ,

                              Petitioner,

     -against-

UNITED STATES OF AMERICA,

                              Respondent.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-2473 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Petitioner George Martinez seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 based on the alleged ineffectiveness of his trial counsel. In the alternative, he seeks the restoration of his right to appeal his criminal conviction based on his trial counsel's unauthorized withdrawal of Petitioner's notice of appeal following sentencing. The Petition is granted in part and denied in part. As set forth below, the court finds that trial counsel was ineffective with regard to the withdrawal of the notice of appeal; therefore Petitioner's right to appeal his conviction is restored. Petitioner's remaining claims are denied without prejudice.

**I.    BACKGROUND**

      Petitioner George Martinez was indicted on September 18, 2003 in <u>United States v. Martinez</u>, 03-CR-1049 (NGG). Gino Josh Singer was his trial counsel in this criminal matter. On March 18, 2005, Petitioner pled guilty to one count of conspiracy to possess with intent to distribute one or more kilogram of heroin. <u>Id.</u> (Docket Entry # 126). The prosecution initially calculated Petitioner's guideline range as 324 to 405 months. After Petitioner entered into a stipulation with the Government, his offense level was reduced and his guideline range was changed to 210 to 262 months. In the stipulation, Petitioner waived his right to appeal or

1

challenge his sentence under 28 U.S.C. § 2255, so long as his sentence fell within that range. (See Gov't Opp. (Docket Entry # 11) at 3 (referencing stipulation, which is attached to the Government's submission as Ex. C).) On June 20, 2006, the court sentenced Petitioner to 210 months. United States v. Martinez, 03-CR-1049 (NGG) (Docket Entry # 232).

Seven days later, on June 27, 2006, Petitioner filed a hand-written, pro se notice of appeal. Id. (Docket Entry # 231).[1] On November 29, 2006, Mr. Singer moved for withdrawal of the appeal. See id. (Docket Entry # 254). As part of the motion to withdraw the appeal, Mr. Singer affirmed that:

> I explained to GEORGE MARTINEZ that . . . the stipulation included an unequivocal waiver of appellate rights, given the sentence that was imposed . . . . Thereafter, after GEORGE MARTINEZ was transferred to FCI Allenwood, I wrote to GEORGE MARTINEZ and asked him if it was his desire to withdraw the [] appeal. In response, I received a telephone call from Socorro Martinez Rutman, GEORGE MARTINEZ'S sister. Ms. Rutman informs me that GEORGE MARTINEZ has told her that it is his desire to withdraw the appeal.

(Gov't Opp. (Docket Entry # 11) at 3 (quoting Singer Affirmation at 3-4).) The Court of Appeals granted the motion to withdraw Petitioner's notice of appeal on December 22, 2006. See United States v. Martinez, 03-CR-1049 (NGG) (Docket Entry # 254).

## II. PROCEDURAL HISTORY

On June 14, 2007, Petitioner, acting pro se, filed the Petition in the above-captioned case, pursuant to 28 U.S.C. § 2255. (Docket Entry # 1.) Petitioner alleged that his trial counsel had been unconstitutionally ineffective in four respects: (1) by stipulating to a guideline enhancement based on a "drug quantity [of] 30 kilograms or more while the government only had less than 15 kilograms in their case in chief," (2) by "goad[ing]" Petitioner to plead guilty, although counsel knew "that he (counsel) was going to stipulate to a drug quantity which would net a pretty stiff

---

[1] Although Mr. Singer filed this document on ECF, he appears not to have participated in its creation. Petitioner signed the notice of appeal "George Martinez Defendant Pro Se." See United States v. Martinez, 03-CR-1049 (NGG) (Docket Entry # 231).

2

penalty compared to the penalty for the quantity the government had in their possession (less than 14 kilograms)," (3) by "coerci[ng]" Petitioner into taking a guilty plea without telling him that "the quantity he would be responsible for would be 30 or more kilograms of heroin," and (4) by "stipulating that [Petitioner] would waive his right to appeal and to file a 2255 motion." (Id. at 5-6.) Petitioner subsequently amended his Petition to include a fifth allegation: that Mr. Singer provided ineffective assistance with regard to his notice of appeal. (Mot. to Amend (Docket Entry # 4) at 1; see also Pet. Mem. of Law (Docket Entry # 5); Martinez Affidavit (Docket Entry # 6) at 2 (stating that he asked counsel to file an appeal on his behalf, and counsel refused); Pet. Supp. Br. (Docket Entry # 8).)[2] Thereafter, on July 31, 2008, the Government filed its opposition to this Petition. (Gov't Opp. (Docket Entry # 11).)

The court ordered Martinez to file an affidavit by his sister, Socorro Rutman, presenting any additional facts related to the withdrawal of his appeal (Docket Entry # 13); and Petitioner did so on September 17, 2008 (Rutman Aff. (Docket Entry # 14-2)). Ms. Rutman swore that Petitioner spoke with her about his appeal and his attempts to contact Mr. Singer, and that Petitioner told her "to allow the attorney to contact him about whether or not to continue with the appeal because there were some issues that needed clarification." (Id. at 1.) Ms. Rutman also acknowledged that she had misunderstood her brother's instructions. (Id.) The court also ordered Mr. Singer to provide it with any information relevant to whether Ms. Rutman had actual or apparent authority to act on Petitioner's behalf. (Docket Entry # 22.) On September 9, 2009,

---

[2] Petitioner filed his Motion to Amend the Petition on May 14, 2008. (See Mot. to Amend (Docket Entry # 4).) Petitioner filed this motion pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), noting that the Government had not yet filed a responsive pleading to the Petition. (Id. at 1-2.) The argument Petitioner makes in his Motion to Amend hinges on "counsel's *failure* to file a notice of appeal after sentencing." (Mot. to Amend ¶ 1 (emphasis added).) In a Supplemental Brief filed on July 9, 2008, Petitioner clarifies the issue: He states that he has learned that counsel did in fact file his pro se appeal, but later withdrew it without authorization. (Pet. Supp. Brief at ¶¶ 3-8.) That claim accurately states his current argument.
   As discussed below, the Government places undue emphasis on the 18-month gap between the date of Petitioner's sentencing and July 9, 2008.

3

the Government filed an affidavit by Mr. Singer, dated August 18, 2009. (Singer Affidavit (Docket Entry # 27-2) (attached).) In it, Mr. Singer stated that he withdrew the appeal at Ms. Rutman's direction. He stated that Ms. Rutman's "actual or apparent authority to act on MARTINEZ's behalf was demonstrated in various ways": Mr. Singer prepared documents giving Ms. Rutman power of attorney over Petitioner's affairs, Ms. Rutman managed Petitioner's businesses, Ms. Rutman recovered property from the Government on Petitioner's behalf, and Ms. Rutman acted on Petitioner's behalf in connection with the sale of several houses. (Id. at 1-4.)

The court determined that an evidentiary hearing was necessary. On December 9, 2010, the court issued a Memorandum and Order, stating that it would hold a hearing "to determine (1) whether trial counsel's decision to withdraw the notice of appeal based on communications with Petitioners' sister—and without further consultation with Petitioner—constituted constitutionally deficient representation, and, if so, (2) whether 'but for counsel's deficient performance, [Petitioner] would have appealed.'" (Docket Entry # 40 (citing Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000); Campusano v. United States, 442 F.3d 770, 771 (2d Cir. 2006).) The court appointed Kelley Sharkey to represent Petitioner on January 14, 2011. (Docket Entry ## 41, 42.)

Unfortunately, in October 2010—after filing his affidavit in this case but before the hearing—Mr. Singer suffered a massive stroke. As a result of the stroke, he has suffered significant speech and memory losses, which both parties agree make him unavailable to testify. (See Docket Entry of October 20, 2011; Oct. 20 Tr. at 44-45.) As such, on February 16, 2011, the Government filed a Motion in Limine, "requesting that the Court allow Mr. Singer's Affidavit and Affirmation to substitute for the former attorney's appearance at [the evidentiary] hearing." (Gov't Mot. in Limine (Docket Entry # 43).) Petitioner opposes the Government's Motion in Limine. (Docket Entry # 44.)

4

The court conducted the evidentiary hearing on October 20 and 24, 2011. At the hearing Petitioner's sister, Socorro Rutman, testified. Ms. Rutman stated that after the sentencing, she attempted to contact Mr. Singer 7 to 10 times on her brother's behalf because Petitioner had been unable to reach Mr. Singer (Oct. 20 Tr. at 6); when Mr. Singer eventually responded to her calls, he said that he was unavailable to see Petitioner and encouraged Ms. Rutman to relay messages between them (id. at 6-7); and—when she relayed this information to Petitioner—Petitioner became frustrated and told her to "forget about it" before hanging up the telephone (id. at 9). Ms. Rutman stated that she relayed this message to Mr. Singer and that she wrongly interpreted her brother's statement to mean that he wanted to "forget about" the appeal. (Id. at 9-10.) The Government questioned Ms. Rutman about a durable power of attorney, which both she and Petitioner signed in 2004; and Ms. Rutman testified that she understood the power of attorney to give her authority to make decisions regarding her brother's bank accounts and property (which she and Petitioner owned jointly), not personal legal matters. (Id. 10-17; see Power of Attorney (Gov't Ex. 2) (attached).) Ms. Rutman also testified that she did not manage her brother's business affairs. (Oct. 20 Tr. at 17 (stating that she had not run Petitioner's gas station or parking lot).)[3]

Petitioner also testified at the hearing on his own behalf. He stated that he never authorized Mr. Singer to withdraw his notice of appeal, he never authorized his sister to tell Mr. Singer to withdraw his notice of appeal, and—despite 5 to 6 attempts to do so—he was not able to reach Mr. Singer by telephone.[4] (Id at 27-30.) Petitioner stated that on several occasions, he

---

[3] This testimony conflicts with allegations in Mr. Singer's Affidavit that Ms. Rutman ran her brother's businesses. The court credits Ms. Rutman's testimony. Ms. Rutman certainly would have been aware of whether or not she took on such a role with regard to her brother's businesses, and the court found her testimony on this point credible, unequivocal, and consistent with her previously filed affidavit.

[4] Petitioner testified that he spoke to Mr. Singer a few weeks after his sentencing, while he was being held at the Metropolitan Detention Center, but was never able to reach him after that, once he was designated to FCI Allenwood. (Tr. at 28.)

was told to call Mr. Singer "at a certain time," but even when Petitioner called at these times, Mr. Singer "was never available." (Id. at 28.) Petitioner also testified that when he told his sister to "forget it," he was not referring to the appeal. (Id. at 29-30.) His intended meaning was that Ms. Rutman "forget about" continuing to attempt to contact Mr. Singer on his behalf. (Id. at 29-30 (further explaining that he believed that Mr. Singer had a duty to come contact him by telephone or come see him in person before making decisions about Petitioner's case.)) Additionally, Petitioner testified that it was not his understanding that the power of attorney he signed gave his sister authority to make legal decisions with regard to his criminal case. (Id. at 38-39.) The court finds Petitioner's testimony credible with regard to each of these issues.

The Government called one witness: Assistant United States Attorney Brendan King. Mr. King testified that he was involved in returning some of Petitioner's property—several watches—to "a female," who accompanied Mr. Singer to pick the property up and who signed for it. (Oct. 24 Tr. at 2-5.) (Ms. Rutman's testimony confirmed that she was the woman who picked up the property. (Oct. 20 Tr. at 17-18.)) Mr. King, though credible, was able to provide little additional information about this incident. The Government also introduced into evidence the 2004 power of attorney signed by Petitioner and his sister. (Gov't Ex. 2.)

Following the hearing, both parties provided the court with additional briefing. (Pet. Post-Hearing Mem. (Docket Entry # 52); Gov't Post-Hearing Mem. (Docket Entry # 53).)

## III. DISCUSSION

### A. Singer Affidavit

The first issue the court must address is whether Mr. Singer's Affidavit of August 19, 2008 may be admitted into evidence in lieu of his testimony. In considering a petitioner's federal habeas claim, a full evidentiary hearing with live testimony is not always required. See

Puglisi v. United States, 596 F.3d 209, 214-15 (2d Cir. 2009); Chang v. United States, 350 F.3d 79, 80 (2d Cir. 2001). Judges have discretion to consider a variety of materials in § 2255 proceedings. Title 28 United States Code, Section 2246 provides that: "On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits." The Federal Rules Governing Section 2255 Proceedings likewise provide that "[a]ffidavits . . . may be submitted and considered as part of the record." Fed. R. Gov. § 2255 Proc. 7(b); see also Malpeso v. United States, 38 Fed. Appx. 45, 47-47 (2d Cir. 2002) (affirming denial of 2255 petition based on trial counsel's affidavit). The Rules further require that the court give "the party against whom [these] materials are offered an opportunity to admit or deny their correctness." Fed. R. Gov. § 2255 Proc. 7(c).

Here, the court held a full evidentiary hearing. Petitioner had an opportunity to admit or deny the correctness of Mr. Singer's statements—and he availed himself of that opportunity by testifying at the hearing. Furthermore, over a year elapsed between the submission of Mr. Singer's Affidavit (which the Government filed on September 9, 2009) and Mr. Singer's stroke on October 4, 2010. Although Petitioner was acting pro se throughout this period, he nonetheless could have propounded written interrogatories had he chosen to do so.

Consistent with Rule 7 of the Federal Rules Governing Section 2255 Proceedings, and in light of Mr. Singer's unavailability, the court will consider the Affidavit of August 19, 2008 as part of the record here.

B.     **Petitioner's Ineffectiveness Claims**

1.     **Legal Standard**

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Fed. R. Gov. § 2255 Proc. 4(b).

The Sixth Amendment guarantees the right of a criminal defendant to the effective assistance of counsel. U.S. Const. Am. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."). Under Strickland v. Washington, a defendant claiming ineffective assistance of counsel must satisfy the requirements of the following two-part test: He or she must demonstrate that counsel's representation (1) "fell below an objective standard of reasonableness," and (2) resulted in prejudice to the defendant. 466 U.S. 668, 688, 694 (1984).

In a § 2255 proceeding, the petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

2.     **Withdrawal of Petitioner's Notice of Appeal**

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court applied the Strickland test with regard to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. The Court held that where a criminal defendant asks his or her lawyer to file a notice of appeal, (1) counsel's failure to do so is professionally unreasonable, id. at 477, and (2) prejudice will be presumed where this conduct results in "the forfeiture of a proceeding," id. at 483–84. Alternately, if counsel fails to consult with the defendant about filing a notice of appeal,

8

the appropriate inquiry is whether "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [the defendant] would have timely appealed." Id. at 484. If so, a presumption of prejudice arises in this circumstance as well. Id.

Applying Flores-Ortega, the Second Circuit has held that the presumption of prejudice applies even where a defendant has waived his or her right to appeal in a plea agreement. Campusano v. United States, 442 F.3d 770, 771 (2d Cir. 2006). Where a defendant successfully shows that his or her attorney was ineffective in failing to file a notice of appeal, the appropriate remedy is restoration of that defendant's right to appeal; this is so even if the appeal itself is meritless. Flores-Ortega, 528 U.S. at 477 ("When counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." (citations and internal punctuation omitted)); see also Campusano, 442 F.3d at 777 ("The concern animating Flores–Ortega . . . is a powerful one even where the defendant is the only person who believes an appeal would be worthwhile.").[5]

Here, Mr. Singer's withdrawal of the notice of appeal was objectively professionally unreasonable. Most significantly, Mr. Singer failed to communicate with his client at any point between filing the notice of appeal and making the decision to withdraw it. During the last conversation Mr. Singer had with Petitioner, shortly after sentencing, Petitioner remained

---

[5] To the extent that Mr. Singer believed that pursuing Petitioner's appeal would have been frivolous—as his Affirmation of November 29, 2006 indicates that he did—there is a procedural mechanism by which to make that position clear. In such circumstances, counsel must file a brief with the Court of Appeals, pursuant to Anders v. California, 386 U.S. 738 (1967). See United States v. Leyba, 379 F.3d 53, 54 (2d Cir. 2004). If "counsel is convinced, *after conscientious investigation*, that the appeal is frivolous," he may seek the court's permission to withdraw. Id. (quoting Anders). This request "must . . . be accompanied by a brief referring to anything in the record that might arguably support the appeal." Id. (quoting Anders). In addition to providing the court with an Anders brief, counsel has an obligation to inform his client of his position and alert the client that he may file a pro se appellate brief. Id. (citing United States v. Arrous, 320 F.3d 355, 358 (2d Cir. 2003) (counsel must provide client with a copy of the motion and Anders brief, and a letter informing client of his right to file a pro se brief) and United States Court of Appeals for the Second Circuit, How to Appeal Your Criminal Case 6 (2004) (requiring, pursuant to court's rules, that counsel confirm by affidavit or affirmation that he has informed the client of certain additional information). Attorneys may not short cut this process—as Mr. Singer did here—by simply withdrawing a client's notice of appeal.

9

committed to seeking an appeal. (See Oct. 20 Tr. at 28.) Petitioner credibly testified that he left multiple messages for Mr. Singer, Ms. Rutman confirmed that she did the same on her brother's behalf, and Mr. Singer's affidavit does nothing to dispute this evidence. A reasonable attorney would not have utterly ignored his obligation to communicate with his client in these circumstances.

Furthermore, the reasons Mr. Singer's affidavit provides for his assumption that Ms. Rutman had authority to make legal decisions in relation to Petitioner's criminal case are flimsy at best. It is not at all clear from the face of the durable power of attorney that this document refers to decisions regarding any criminal litigation matter, let alone decisions that affect Petitioner's core Constitutional rights.[6] More to the point, the court will not countenance any argument that it is permissible for a defendant to assign of this type of authority—to make decisions crucial to a criminal proceeding—to a family member or any other agent. Absent a defendant's disability or incapacity, attorneys must take direction from their criminal clients, not from any third party. This requirement is consistent with due process and with counsel's professional ethical obligations. Both Ms. Rutman and Petitioner testified that they did not understand Ms. Rutman to have authority to make legal decisions on Petitioner's behalf, and that

---

[6] New York General Obligations Law Article 5, Title 15, Sections 5-1502A through 5-1503 governs statutory short form durable general power of attorneys, like the one at issue in this case. Neither this statute nor the power of attorney form that Petitioner and Ms. Rutman signed refers specifically to criminal matters. Rather the statute and the document allow for the assignment of rights regarding the signatory's property. The first line of text on the durable power of attorney Petitioner signed specifically cautions: "This is an important document. It gives the person whom you designate (your "Agent") broad powers to handle *your property* during your lifetime, which may include powers to mortgage, sell, or otherwise dispose of any real or personal property without advance notice to you or approval by you." (See Gov't Ex. 2 at 1 (emphasis added).)

Although "claims and litigation" is one of the categories of coverage listed on the power of attorney, it is not clear to the court that either this category or any of the others listed assigns any rights related to criminal proceedings. Moreover, the court rejects any suggestion that a third party can waive a substantive or procedural right on behalf of a criminal defendant. See Clark v. Burge, 06-CV-658, 2007 WL 199475, *1-2 (W.D.N.Y. Apr. 19, 2007) (declining to allow "attorney in fact" to litigate habeas claim on behalf of inmate); Smolenski v. T.G.I. Friday's, Inc., 834 N.Y.S.2d 436 (N.Y. Sup. Ct. 2007) (holding that plaintiff in personal injury action could not, via a power of attorney, grant her husband/co-plaintiff authority to litigate the claim on her behalf).

she had never exercised such authority in the past.[7] This position is not belied by the fact that Ms. Rutman (accompanied by Mr. Singer) recovered property from the Government on Petitioner's behalf[8] or that Ms. Rutman acted on Petitioner's behalf in connection with the sale of several houses. As to Mr. Singer's claim that Ms. Rutman managed Petitioner's businesses, Ms. Rutman flatly denied doing so. Moreover, even if the evidence had shown that Ms. Rutman had managed Petitioner's businesses, which it does not, such evidence would conform with her position that the durable power of attorney extended only to business, not criminal, matters.

Additionally, Mr. Singer's reliance on this information must also be read in light of the other information available to him. Most notably, Petitioner called Mr. Singer's office repeatedly, including at agreed upon times; Ms. Rutman communicated to Mr. Singer that Petitioner needed to speak with him; and Petitioner had not only previously expressed a desire to appeal but had drafted a pro se notice of appeal when counsel discouraged him from doing so. These factors would have been relevant to any reasonable professional. In sum, they make clear that Petitioner was actively involved in the continuing litigation of his criminal case—not that he had ceded such responsibility to his sister.

The court also finds by a preponderance of the evidence that but for Mr. Singer's deficient representation, Petitioner would have timely appealed. Petitioner has consistently expressed a desire to appeal and taken action in pursuit of that goal. Despite his attorney's counseling to not do so, Petitioner filed a pro se notice of appeal. He diligently attempted to

---

[7]   Notably, over two years elapsed between the execution of the durable power of attorney on December 6, 2004 and the withdrawal of the notice appeal on December 22, 2006. The court finds implausible Mr. Singer's suggestion that, pursuant to the power of attorney, Ms. Rutman had authority to make legal decisions for her brother throughout this two year period, but that prior to the conversation at issue here she had consistently declined to exercise such authority and Mr. Singer had not sought her input on any legal issue.

[8]   Neither Mr. Singer's Affidavit nor AUSA King's testimony make clear whether the Government released Petitioner's watches because Ms. Rutman was Petitioner's sister or because Mr. Singer was his attorney. (See Oct. 24 Tr. at 3 (testimony of AUSA King: "I'm not sure who actually took possession of the watches but [Petitioner's] attorney was there, Mr. Singer.").)

contact his attorney, both by himself and through his sister, in order to confirm his position that the appeal should go forward. After Mr. Singer withdrew Petitioner's appeal without authorization, Petitioner acted pro se to file the instant case, in which he has been an active and assertive participant. More to the point, there is no evidence whatsoever that Petitioner ever wavered in his desire to appeal his sentence, and the record is clear that he has diligently pursued that objective.

The Government's primary argument with regard to this prong of the <u>Strickland</u> test focuses on 18-month period between Petitioner's sentencing and the date on which he filed a Supplement Brief in this habeas proceeding. Although the Government does not—and could not—claim that either the Petition or the Amended Petition were untimely filed, it argues that the length of time that elapsed before Petitioner *clarified* his habeas claim with regard to the withdrawal of the notice of appeal is significant. The Government arguess that—even in the absence of ineffective assistance of counsel—this so-called delay suggests that Petitioner would not have timely appealed. (<u>See</u> Gov't Opp. (Docket Entry # 11) at 7; Gov't Post-Hearing Mem. (Docket Entry # 52) at 14.) This argument is unpersuasive. The Government's assertion that the court should heed the date on which Petitioner filed his Supplemental Brief (as opposed to his Petition or Amended Petition) is misplaced. Both Petitioner's original submission and his amendments thereto were filed without the aid of an attorney, and the court reads the arguments raised in these filings liberally in light of Petitioner's pro se status. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

12

by lawyers." (internal citations and quotation marks omitted)); Chang v. United States, 250 F.3d 79, 86 n. 2 (2d Cir. 2001) (applying liberal pro se pleading standard in a federal habeas proceeding). It would be inappropriate for the court to read Plaintiff's failure to perfectly articulate his claim in his timely initial habeas submissions as evidence that he would have slept on his rights had his trial counsel not performed deficiently. More importantly, the record is replete with evidence that throughout this litigation—including during the 18-month period that the Government identifies—Petitioner was actively litigating his case and pursuing an appeal.

In light of the foregoing, the court finds by a preponderance of the evidence that Petitioner has met his burden of proving that Mr. Singer's actions were objectively professionally unreasonable and that there is a reasonable probability that, in the absence of counsel's deficient conduct, Petitioner would have appealed his conviction. Accordingly, the court finds that Petitioner was prejudiced, and his appellate rights shall be restored. See Flores-Oretga, 528 U.S. at 484; Campusano, 442 F.3d at 777.

### C.    Remaining § 2255 Claims

The court does not reach the remaining claims set forth in the Petition. In light of the restoration of Petitioner's right to appeal his conviction, the additional claims for relief are moot. Petitioner's additional claims pursuant to 28 U.S.C. § 2255 are therefore denied without prejudice. Petitioner may reassert these claims, if he so chooses, if his conviction is affirmed on appeal.

## IV. CONCLUSION

For the foregoing reasons, the Petition is GRANTED in part and DENIED in part. The court finds that trial counsel was ineffective with regard to the withdrawal of Petitioner's appeal, and Petitioner's right to appeal is therefore restored. Petitioner's remaining claims pursuant to 28 U.S.C. § 2255 are denied without prejudice.

SO ORDERED.

Dated: Brooklyn, New York  
      January 26, 2012

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge